UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 07-11511-RWZ

SPECIALTY MEDICAL EQUIPMENT LLC

v.

KINDRED HEALTHCARE OPERATING, INC., et al.

ORDER
March 29, 2010

ZOBEL, D.J.

Kindred Healthcare Operating, Inc., and Kindred Healthcare, Inc. (collectively "Kindred), in February 2006, purchased the assets of a number of nursing and elder care facilities located in Massachusetts and assumed certain rental agreements the predecessor owners had made on behalf of each facility with plaintiff, Specialty Medical Equipment, LLC. ("SME"). The rental agreements were effective July 2005 and had a term of two years. They provided for automatic renewal, absent written notice of termination by either party, and they covered a variety of equipment from special beds, mattresses, "bariatric room environment" and wheelchairs to wound closure pumps. For the term of the agreement, SME was the exclusive supplier of the rental equipment specified at the fee established therein. Shortly after completion of the purchase, Kindred determined that the rental fees charged by SME were substantially in excess of those charged by its national suppliers and it requested, and received, a lower pricing schedule from SME. SME, however, claims that it accommodated Kindred on condition

that the latter would give it all of its New England business. Kindred denies that it ever agreed to the condition and asserts that, instead, it told SME that it was prepared to purchase the equipment and thus eliminate all rental payments. For a period of time SME invoiced rentals at the lower rate but Kindred did not increase its business with SME. When it gave notice of termination in 2007, SME brought this action. Pursuant to a hold harmless clause in the agreement, Kindred counterclaimed for indemnification of the costs incurred in the defense of this case. After discovery it moved for summary judgment which the court allowed without opposition. The matter is now before me on SME's motion for reconsideration.

Although Kindred vigorously, and not without justification, opposes reconsideration, that motion is allowed. However, plaintiff's opposition to the motion for summary judgment does not change the result. The essential and only facts which SME disputes concern the terms of the price modification. It insists that the modification was conditioned on Kindred increasing the amount of the business it gave to SME either in the form of added agreements for all New England facilities or in the form of extended terms for the existing agreements, which conditions Kindred did not satisfy.

Kindred presented an extensive statement of undisputed material facts copiously annotated to deposition testimony, affidavits and exhibits, including e-mails. SME "contests" numerous statements, but provides no facts to contradict them. Many other statements remain unchallenged for lack of any response. Following are the undisputed facts that are relevant to the modification of the rental agreements and thus to the motion for summary judgment.

In November 2005, before the acquisition was complete C. Michael Grannan, Vice President of Purchasing at Kindred, began to review and evaluate the agreements to be assumed and the cost structure and expenses of the facilities to be acquired. A comparison between rental costs under the SME agreements and those payable for other of its facilities showed the former to be substantially higher. Grannan's analysis projected the rental payable to SME to be approximately $1 million per year higher than renting from Kindred's other suppliers. He also determined that purchasing the equipment would be a more cost effective option for Kindred.

After the acquisition, some time in March 2006, Jeffrey Goldshine, one of the principals and the CEO of SME, initiated an exchange of e-mails with Kindred focused on Kindred's concerns about the rental charges. By April 7, Kindred had told Goldshine and Rian Mallari, a minority owner of SME, that Kindred was planning to purchase the equipment rather than continue to rent. Goldshine responded "I will give you the lowest pricing of any of our customers and anything our competitors have ever offered," and on April 18 wrote that SME "will present new pricing at our meeting....next week"

At the meeting on April 25, Goldshine did present on behalf of SME new and lower pricing than that in the rental agreements and he requested more business from Kindred. Grannan agreed only to include two additional hospitals in the rental arrangement and emphasized that no more business would be forthcoming. SME continued to press, but Kindred's internal e-mails show that it decided on and adhered to its tough "no further business to SME" position. It needed to do business with SME but did not want to dilute its leverage with its national suppliers. The parties met again on May 18. Grannan told Goldshine and Mallari that Kindred would stop renting and

3

instead buy the equipment unless SME lowered its price. Furthermore, Kindred remained firm that no new business beyond those two hospitals would be forthcoming.

Mallari e-mailed a new, lower and unconditional price list on May 25, and SME thereafter invoiced all rentals in accordance with that price list through April 2007. Kindred, on April 27, 2007, notified SME that it would not continue the rental agreements beyond the June 30, 2007, termination date. In response SME reverted to the original prices in its May and June statements, but Kindred paid all invoices from May 2006 through June 2007 at the lower rate. On August 8, 2007, SME filed this lawsuit for breach of contract and several other theories, all to recover damages in the amount of the difference between the original and the modified prices for the entire period from May 2006 through June 2007.

Although none of the invoices from May 2006 through April 2007 stated that the prices were conditioned on additional business from Kindred or an extension of the agreements, SME did continue to seek concessions from Kindred during this period. Kindred repeatedly declined to entertain these requests and repeatedly told Kindred that there would be no concessions.

On the evidence submitted by the parties, there is no dispute that SME sought additional business from Kindred, but that, except for the addition of two hospitals during the April/May 2006 discussions, Kindred explicitly and repeatedly refused to add more, and that SME accepted the lower pricing schedule unconditionally. It is also undisputed that while SME sought to extend the term of the agreements, the parties did not agree on any extension and did not execute a new contract and that the parties never agreed to condition the lower prices then in effect on an extension.

To the extent SME argues that the modification is legally defective because not supported by consideration, the argument fails on both the facts and the law. Kindred indisputably was interested in buying the equipment and requested a price quote from SME, and SME indisputedly understood that Kindred's purchase would be the end of SME's rental business. Kindred's forbearance from buying is therefore more than adequate consideration.

In summary, plaintiff's motion for reconsideration (Docket # 42) is allowed. However, on reconsideration defendants' motion for summary judgment (Docket # 32) is also allowed in respect to plaintiff's complaint. The facts essential to all of plaintiff's claims, in particular, that the parties conditioned plaintiff's reduced price list on defendants increasing its business with plaintiff or extending the term of the agreement, are not in dispute and they do not support its claims.[1] In respect to defendants' motion for summary judgment on its counterclaim, the court encourages the parties to settle that aspect of the case. They shall notify the court of the status of their negotiations by April 16, 2010.

March 29, 2010
DATE

RYA W. ZOBEL
UNITED STATES DISTRICT JUDGE

---

[1] Seven of the ten counts in the complaint allege various breaches of contract all of which depend on proof that the modifications were subject to conditions. Counts 6 and 7 were previously dismissed and Count 10, for quantum meruit, is dismissed because there were express contracts and defendant was fully paid in accordance with them.

5